# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARCIE ABERMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12-cv-10181 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| BOARD OF EDUCATION OF THE CITY ) | |
| OF CHICAGO, ET AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' partial motion to dismiss Plaintiff's first amended complaint [37]. For the reasons stated below, the Court grants in part and denies in part Defendants' partial motion to dismiss [37].

**I.    Background[1]**

In March 1987, Plaintiff Marcie Aberman was hired as a mathematics teacher at Nicholas Senn High School ("Senn") in Chicago, Illinois. During school years 2005-2006 and 2007-2008, Aberman was rated "excellent" by Senn's former school principal. On March 21, 2011, Aberman received an "unsatisfactory" performance rating from Senn's new principal, Defendant Susan Lofton, and was assigned to the teacher reassignment pool on July 8, 2011. Aberman has an auditory impairment and is over the age of 40.

On July 20, 2011, Aberman filed a charge with the Illinois Department of Human Rights ("IDHR") against Lofton and Defendant Board of Education of the City of Chicago, alleging age

---

[1] For purposes of the current motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in Plaintiff's favor. See, *e.g.*, *White v. Marshall & Ilsley Corp.*, --- F.3d ---, 2013 WL 1688918, at *5 (7th Cir. Apr. 19, 2013).

and disability discrimination. Aberman claimed that she was given an unsatisfactory evaluation, forced to take involuntary leave, and placed in the reassigned teacher pool. On August 28, 2012, the IDHR issued a Notification of Dismissal for Lack of Substantial Evidence. On December 3, 2012, Aberman filed a Request for Review of the dismissal with the Illinois Human Rights Commission (IHRC). She also filed the a complaint in the Circuit Court of Cook County, Illinois, seeking redress for her Illinois Human Rights Act (IHRA) claims and other state and federal claims. Defendants removed the matter to federal court.

Defendants, relying on the Illinois Human Rights Act ("IHRA"), moved to dismiss Plaintiff's complaint, arguing that because Aberman elected to proceed before the IHRC, she could not commence an action in the Circuit Court of Cook County (which was subsequently removed to this court). The Court agreed and granted Defendants' motion to dismiss, as the Illinois Human Rights Act ("IHRA") statutory scheme expressly states that "[i]f the complainant chooses to file a request for review with the Commission, he or *she may not later commence a civil action in a circuit court.*" 775 ILCS 5/7A—102(D)(3) (emphasis added). Aberman then moved to reconsider, clarifying that she first filed suit in state circuit court on December 3, 2012, and then subsequently forwarded a copy of the state court complaint to the IDHR, informing the IDHR of the state court cause of action and seeking review from the Commission. Having clarified the timeline of events, the Court granted Plaintiff's motion to reconsider and allowed Plaintiff to proceed with her lawsuit, as it was not commenced after a request for review with the Commission and Plaintiff no longer had any action pending or stayed with the Commission.

Plaintiff then filed her first amended complaint on April 2, 2014. Plaintiff's first amended complaint against Defendants Board of Education of the City of Chicago and Susan Lofton contains 10 counts: age discrimination in violation of the Age Discrimination in

2

Employment Act ("ADEA") and the Illinois Human Rights Act ("IHRA") against the Board (Count I); disability discrimination in violation of the IHRA and the Americans with Disabilities Act ("ADA") against the Board (Count II); violations of the Rehabilitation Act § 504 against the Board and Lofton (Count III); violations of the Family Medical Leave Act ("FMLA") against the Board and Lofton (Count IV); Fourteenth Amendment due process against the Board and Lofton (Count V); Fourteenth Amendment and Illinois Constitution Article II substantive due process against the Board and Lofton (Count VI); breach of contract against the Board (Count VII); intentional interference with contractual relations against Lofton (Count VIII); mandamus under Illinois School Code Section 34-85 (Count IX); and negligent supervision against the Board (Count X). Defendants partially move to dismiss Plaintiff's amended complaint.

## II.  Legal Standards

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given "'fair notice of what the * * * claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft*

3

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

### III. Discussion

Defendants Board and Susan Lofton move to partially dismiss Plaintiff's 10-count complaint. Specifically, Defendants challenge Counts III, V, VI, VIII, IX, and X in their entirety; Counts I and II to the extent that Plaintiff failed to exhaust administrative remedies; and Count IV as to Lofton only. In her response, Plaintiff did not address the following arguments that Defendants raised in their motion to dismiss: (1) that Counts V and VI should be dismissed because they attempt to make claims directly under the United States and Illinois Constitutions; (2) that Plaintiff's due process claim (Count V) should be dismissed because she has adequate state law and post-deprivation remedies; (3) that Plaintiff's claim for mandamus must be dismissed (Count IX); and (4) that Plaintiff's negligent supervision claim is barred by the statute of limitations. Because Plaintiff did not address Defendants' arguments in her response to the motion to dismiss, she has waived these claims. See *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (affirming district court's dismissal order against plaintiff that failed to address defendants' arguments supporting dismissal: "Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court * * * * We apply that rule * * * * where a litigant effectively abandons the litigation by not responding to alleged

4

deficiencies in a motion to dismiss."). Therefore, the Court will grant Defendants' motion to dismiss as it pertains to Counts V, VI, IX, and X, and proceed to the challenged counts.

A.  **Failure to Exhaust Administrative Remedies**

Counts I and II of Plaintiff's amended complaint allege age and disability discrimination under four separate theories: (1) intentional discrimination; (2) failure to accommodate; (3) disparate impact; and (4) failure to rehire.[2] Before filing suit in federal court under the ADA and ADEA, a plaintiff must file a timely charge with the EEOC. *Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006); *Gorence v. Eagle Food Ctrs.*, 242 F.3d 759, 763 (7th Cir. 2001); see also 29 U.S.C. § 626(d), (e); 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e–5(b), (e), & (f). Plaintiff also brings her age and disability discrimination claims pursuant to the Illinois Human Rights Act ("IHRA"). Like the federal statutory counterparts, Plaintiff must exhaust administrative remedies for her age and disability discrimination claims brought pursuant to the IHRA. See *Elgin v. Waste Mgmt. of Ill., Inc.*, 348 Ill. App. 3d 929, 935 (Ill. App. Ct. 2nd Dist. 2004).

Defendants contend that Plaintiff has failed to exhaust her administrative remedies on her failure to accommodate and failure to rehire claims. In response, Plaintiff claims that she did not provide sufficient information in her pleadings for the Court to assess whether she exhausted her administrative remedies. However, Plaintiff states in her amended complaint that she "received a right to sue letter from the IDHR in August 2012, Exhibit G, and filed suit based on that letter on December 3, 2012." Plaintiff further states that "[i]n April 2013, [she] received a right-to-sue letter from the EEOC * * * subsequently informed Defendants thereof," citing to Exhibit H,

---

[2] Plaintiff also alleges "failure to engage in the interactive process" as a theory of liability for her ADA claim (Count II). However, the failure to engage in the interactive process is not an independent basis for liability under the ADA, and that failure is only actionable if it prevents identification of an appropriate accommodation for a qualified individual. *Basden v. Professional Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013). Here, as set forth below, Plaintiff failed to exhaust her administrative remedies for her failure to accommodate, including any alleged failure to engage in the interactive process.

5

which is attached to the amended complaint. While a plaintiff has no obligation to attach particular documents to her complaint, if a plaintiff fails to attach the document upon which her complaint was based, a defendant may introduce that document. See *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (citation omitted). Documents that are attached by a defendant to a motion to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* at 431; see also *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 739 n.12 (7th Cir. 1986). Here, Plaintiff, in alleging that she has exhausted her administrative remedies, puts the issue of exhaustion before the Court.

The EEOC and the Illinois Department of Human Rights ("IDHR") have a work sharing agreement which provides for dual filing in both agencies, unless the complainant opts out. In other words, a charge filed with the EEOC is deemed to be filed with IDHR as well. See *Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 642-43 n. 13 (7th Cir. 2004). Thus, Plaintiff's state and federal age and disability discrimination claims are based on the factual allegations contained in her EEOC charge of discrimination. Plaintiff received right-to-sue letters from both the EEOC and IDHR. Plaintiff's EEOC charge, however, does not include failure to accommodate or failure to rehire claims. Rather, Plaintiff charges only that she was discriminated against based on her disability and age in being "forced on a medical leave of absence" and reassigned to a less desirable position.

"The Seventh Circuit made clear in *Green* that a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA. In fact, the two types of claims are analyzed differently under the law. Therefore, they are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an

investigation into a claim that an employee was terminated because of a disability." *Beard v. Don McCue Chevrolet*, 2012 WL 2930121, *10 (N.D. Ill. July 18, 2012) (citing *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999)); *Williams v. City of Chicago*, 2012 WL 205908, *1–3 (N.D. Ill. Jan. 24, 2012) (dismissing an ADA accommodation claim for failure to exhaust administrative remedies); *Kaplan v. New Trier High Sch.*, 2011 WL 2148936, *3 (N.D. Ill. May 31, 2011) (holding that a failure to accommodate claim exceeded the scope of an EEOC charge that alleged only disability discrimination); *Baker v. Potter*, 2005 WL 843169, *10 (N.D. Ill. Jan. 20, 2005) ("A complaint of disparate treatment and retaliation would not naturally lead into an investigation of a failure to accommodate."). Here, Plaintiff's EEOC charge alleged age and disability discrimination but did not allege a failure to accommodate her disability.

Likewise, an employer's decision to place an employee on medical leave or to reassign her is a separate and distinct act from a subsequent decision not to rehire that employee. See *Oxman v. WLS-TV*, 12 F.3d 652, 660-61 (7th Cir. 1993) (lawsuit's failure-to-rehire claim not reasonably related to EEOC termination claim); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir. 2000) (same); *Salvato v. Illinois Dept. of Human Rights*, 1997 WL 12793, at *3 (N.D. Ill. Jan., 10, 1997) (failure-to-rehire and discriminatory discharge are separate and distinct). Plaintiff's EEOC charge did not allege a failure to hire claim.

Because Plaintiff did not exhaust her failure to accommodate and failure to rehire claims, the Court grants Defendants' motion and dismisses Counts I and II to the extent that they allege age and disability discrimination under the theories of failure to accommodate and failure to rehire. Counts I and II remain pending as to Plaintiff's claims of intentional discrimination and disparate impact.

### B. Timeliness of Plaintiff's Rehabilitation Act Claim

While a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim. *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). Here, Plaintiff alleges that she was found to be "unfit for duty" in April 2011 and that the Board denied her request for a reasonable accommodation on September 23, 2011. Plaintiff pleads an employment discrimination claim under § 504 of the Rehabilitation Act for the first time in her amended complaint, filed on April 2, 2014.

The Seventh Circuit has explicitly held that Illinois' two-year statute of limitations for personal injury claims applies to actions brought under the Rehabilitation Act. *Conley v. Village of Bedford Park,* 215 F.3d 703, 710 n.5 (7th Cir. 2000); see also *Untermyer v. College of Lake County,* 284 Fed. Appx. 328, 330 (7th Cir. 2008); *Bush v. Commonwealth Edison Co.,* 990 F.2d 928, 933 (7th Cir. 1993) (noting that Rehabilitation Act claims are "closely akin to laws, which indisputably are civil rights laws, forbidding employment discrimination on grounds of race, sex, and age," and therefore, because the "Supreme Court has held that in borrowing statutes of limitations for federal civil rights cases the court should look to state statutes governing personal injury suits," a two-year limitations period applies to Section 504 claims); but see *Fowler v. UpMC Shadyside,* 578 F.3d 203 (3rd Cir. 2009). Here, based on the Seventh Circuit's pronouncement in *Conley,* the statute of limitations for Plaintiff's Rehabilitation Act claim expired on September 23, 2013, six month before she filed her amended complaint. However, Plaintiff maintains that Federal Rule of Civil Procedure 15(c) allows

8

relation back in these circumstances. Defendants do not address Plaintiff's relation back argument, and therefore the Court will permit Count III to proceed against the Board.[3]

### C. Rehabilitation Act and FMLA Claims Asserted Against Defendant Lofton

#### 1. *Rehabilitation Act*

It is well established in the Seventh Circuit that individuals who do not otherwise meet the statutory definition of "employer" cannot be liable under the ADA. *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995). Moreover, §504 of the Rehabilitation Act incorporates the liability standards in Title I of the ADA. See 29 U.S.C. § 794(d) ("The standards used to determine whether [§504] has been violated in a complaint alleging employment discrimination shall be the standards applied under Title I of the Americans with disabilities Act of 1990 (42 U.S.C. 12111 et seq.)"); see also *Myers v. Hose*, 50 F.3d 278, 281 (4th Cir. 1995); *Haltek v. Village of Park Forest*, 864 F.Supp. 802, 803 (N.D. Ill. 1994). Thus, only "employers" may be held liable under the Rehabilitation Act. *Cebuhar v. Dept. of Alcoholism and Substance Abuse*, 1997 WL 222871, *3 (N.D. Ill. April 27, 1997). Here, there is no suggestion that Lofton is an "employer" under the Rehabilitation Act, and thus, she cannot be held individually liable. Count III will be dismissed as to Defendant Lofton.

#### 2. *The FMLA*

With respect to whether principals are subject to individual liability under the FMLA, there is a split of authority as to whether public employees qualify as "employer[s]" and hence may be held individually liable under the FMLA. Defendants contend that the FMLA does not permit liability against public employees in their individual capacities. The Fifth and Eighth

---

[3] As set forth below, Plaintiff's Rehabilitation Act claim against Defendant Lofton will be dismissed for a separate reason.

Circuits have concluded, based on the statutory text, that public employees may be sued in their individual capacities under the FMLA if they act directly or indirectly in the interest of their employer—for example, by exercising hiring and firing authority. See *Modica v. Taylor,* 465 F.3d 174, 184–87 (5th Cir. 2006); *Darby v. Bratch,* 287 F.3d 673, 681 (8th Cir. 2002). The Sixth and the Eleventh Circuits have reached the opposite conclusion. See *Mitchell v. Chapman,* 343 F.3d 811, 825–33 (6th Cir.2003); *Wascura v. Carver,* 169 F.3d 683, 685–87 (11th Cir. 1999). The Seventh Circuit has yet to rule on this issue, while district courts within the Seventh Circuit are split. Compare *Lombardi v. Board of Trustees Hinsdale School District 86*, 463 F. Supp. 2d 867, 871 (N.D. Ill. 2006) (concluding that "it is readily apparent that the special definition of "employer" * * * in the local education context does not countenance suits against individual defendants * * * and Congress did not envision individuals being included) with *Cooley v. Board of Educ. of City of Chicago*, 703 F. Supp. 2d 772 (N.D. Ill. 2009) (holding that principals may be held individually liable under FMLA). Not surprisingly, Defendants urge the Court to follow *Lombardi*, while Plaintiff urges the Court to follow *Cooley*.

At this stage of the case, where the factual record has not yet been developed, the prudent course is to follow the reasoning of the district court in *Cooley*, particularly where Defendants did not engage in any textual analysis of the relevant portions of the FMLA—specifically, 29 U.S.C. § 2611 and § 2618—and instead merely urge the Court to follow one district court case. As previously set forth, courts around the country (including numerous courts of appeals) have engaged in a detailed analysis of this issue, and Defendants' minimalist attempt to present the issue to this Court does not fairly present the issue for disposition (nor provide the Court with

any reason to follow the one case relied upon by Defendants).[4] Thus, at this stage, the Court declines to dismiss Count IV as to Defendant Lofton.

### D. Intentional Interference with Contractual Relations against Lofton

To establish a tortious interference with contract claim under Illinois law, a plaintiff must show: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5) damages." *Hess v. Kanoski & Assoc.*, 668 F.3d 446, 454 (7th Cir. 2012). In her amended complaint, Plaintiff alleges that Defendant Lofton induced the Board to

---

[4] The beginning point must be the language of the statute, and courts must presume that when Congress writes a statute, it means what it says and says what it means. *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992). The text of the FMLA provides that the term "employer":

(i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;

(ii) includes—

(I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and

(II) any successor in interest of an employer;

(iii) includes any "public agency," as defined in section 203(x) of this title; and

(iv) includes the Government Accountability Office and the Library of Congress.

29 U.S.C. § 2611(4)(A). The FMLA plainly includes in the definition of employer "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). The statute also includes public agencies as employers. *Id.* § 2611(4)(A)(iii). It therefore seems to follow from a plain reading of the statute that if a public employee "acts, directly or indirectly, in the interest of an employer," she too falls within the FMLA's definition of employer, and thus, may be held liable in her individual capacity. *Modica,* 465 F.3d at 184; *Weth,* 796 F. Supp. 2d at 777. Defendants have not addressed why the plain language of the statute does not control, have not cited any opinions from the various courts of appeals to have addressed this issue, and also have failed to address why § 2618—relied on by the *Lombardi* court—trumps § 2611(4)(A).

break its contractual relationship with Plaintiff. In her response, Plaintiff alleges that she brings her tortious interference with contract claim under two contractual theories: "an implied-in-law employment contract with the Board, or a direct claim under the Contract."

Defendants argue that Plaintiff's claim fails because there was no contractual relationship between her and the Board. Indeed, the Collective Bargaining Agreement—which Plaintiff alleges is the contract at issue—was between the Chicago Teachers Union and the Board. See *Douglas v. Lofton*, 2013 WL 5940749, *4 (N.D. Ill. Nov. 6, 2013) (dismissing tortious interference claim and ruling that the CBA was between the Chicago Teachers Union and the Board, not between the plaintiff and the board). Thus, Plaintiff has failed to demonstrate that a contract between Plaintiff and the Board existed with which Lofton interfered.

Plaintiff nevertheless maintains that Illinois courts recognize an exception in an employment relationship; that is, Plaintiff contends that she had "an implied-in-law employment contract with the Board." Plaintiff does not provide supporting legal authority for her argument; rather, the sole case that she cites pertains to the Illinois tort of interference with prospective economic advantage. See, *e.g., Fellhauer v. City of Geneva*, 568 N.E.2d 870, 877 (Ill. 1991). Here, unlike in *Fellhauer*, the inquiry is not whether Plaintiff had a legitimate expectation of employment relationship, but whether a valid and enforceable contract existed between Plaintiff and the Board. Thus, *Fellhauer* is not instructive to the issue before this Court. In short, Plaintiff's amended complaint is devoid of facts suggesting that an actual contract or an implied-

in-law employment contract existed between Plaintiff and the Board. Plaintiff's intentional interference with contractual relations claim therefore is dismissed.[5]

## IV. Conclusion

For these reasons, the Court grants in part and denies in part Defendants' partial motion to dismiss Plaintiff's amended complaint [37]. The Court dismisses Counts I and II as unexhausted to the extent that they allege age and disability discrimination under the theories of failure to accommodate and failure to rehire and dismisses Count III as it pertains to Defendant Lofton. The Court also dismisses Counts V, VI, VIII, IX, and X. The following counts remain pending: Counts I (age discrimination) and II (disability discrimination) as to Plaintiff's claims of intentional discrimination and disparate impact; Count III (violation of Rehabilitation Act) as to Defendant Board; Count IV (FMLA) as to both Defendants; and Count VII (breach of contract) as to Defendant Board.

Dated: September 30, 2014

_____
Robert M. Dow, Jr.
United States District Judge

---

[5] Because Plaintiff has failed to sufficiently state a claim for tortious interference with contract, the Court need not address Defendants' arguments that the IHRA preempts Plaintiff's claim for intentional interference and that Principal Lofton is immune under the Tort Immunity Act.